## Case No. 2,298.

### The CALCUTTA.

[5 Adm. Rec. 216.]

District Court, S. D. Florida. May, 1854.

SALVAGE—PILOTAGE—COMPENSATION.

[1. The master of a ship in a perilous position, who was proceeding to warp her into a channel, having facilities so to do, accepted the offered services of wreckers, who released the ship from her position, and brought her to port. Held, that the case was one of pilotage in the nature of salvage.]

[2. Ship and cargo were worth $60,000, and the services of the wreckers, while not indispensable, undoubtedly contributed to the safety of the vessel. Held, that $1,500 should be allowed for the service.]

[Cited in The Ocean Belle, Case No. 10,961; Curry v. The Loch Goil, Id. 3,495.]

[In admiralty. Libel by Courtland Williams and others, master and crew of the schooner Dart, against the ship Calcutta and cargo, for salvage services.]

William R. Hackley, for libellants.

S. I. Douglas, for respondents.

MARVIN, District Judge. This ship, laden with about seven hundred tons of railroad iron, during the night of the 26th of April, instant, struck the reef near the Washerwoman shoals, thumped and passed over, when the captain let go his anchor, and, after sounding round the ship, waited for daylight. In the morning the libellant Williams, in the schooner Dart, arrived at the ship, and the assistance of his vessel and crew and eight men from the schooner Florida were accepted to warp the ship out and pilot her to this port. The ship was riding at anchor, thumping occasionally on the bottom with about fifteen fathoms of chain, with patches of rocks within a few yards of her on both sides, on which there were about fourteen feet of water, she drawing sixteen, and the dry rocks situate about a quarter of a mile astern of her. The wind was from the S. E. by E. The weather was good and moderate. It would have been perilous to have attempted to get the ship under way in her position, or to give her more chain. She needed to be warped about a half mile, before sail could be made safely. This service the libellants did, and then piloted her to this port.

The libellants contend that the master was ignorant of the channel, and that he had no boat sufficient to carry out an anchor large enough to hold the ship, and that he could not have warped the ship out without assistance. If it were true—that the master could not have extricated the ship—the value and importance of the libellants' services would be considerably enhanced by this consideration, and they might be entitled to salvage eo nomine. But the proof shows that the master had sounded out the channel before the libellants arrived; that it was an open and plain channel; that he knew his position; that he had a boat capable of carrying out an anchor of 600 lbs. weight; that he had such an anchor with warps and hawsers, and a good crew; and that he had made up his mind to warp the ship out himself, but, when the services of the libellants were offered, he thought it more prudent to accept their assistance. I think it plain that the ship was not in much, if any, danger of total loss, under the circumstances, and the case cannot, with technical propriety, be

called a case of salvage, but a case entitling the libellants to extraordinary pilotage in the nature of salvage:—The case of The Herman [Case No. 6,406], decided in 1840, was also a case of pilotage under extraordinary circumstances—This ship drove over Alligator reef, knocking off her rudder. Bethel and Roberts piloted her to this port, steering her by the sloop Texas. For this service the court decreed $800. The case of The Augusta [Case No. 646]. decided in 1839, was also a case of pilotage. This brig and cargo, valued at about $12,000, during very stormy and violent weather, got in among the Washerwoman shoals, and came to anchor. Smith, in the sloop Reform, under circumstances of considerable danger to himself and vessel, piloted her to this port. The weather continued bad for several days. The court decreed $900. The Mount Washington was also a case of pilotage [Case No. 9,887]. This ship, after a heavy gale, with loss of rudder, came to anchor west of the quicksands. The master, having lost his foremast, erected a jury mast, and she was piloted to this port by Geiger's towing the ship, by the schooner Champion and several other vessels. The court decreed fifteen hundred dollars for this service.

The present ship and cargo are worth about $60,000. The cases cited show that pilot services rendered by the wreckers, under extraordinary circumstances, have heretofore been rewarded in this court with a considerable degree of liberality. It is both just and politic that they should be so rewarded. The wreckers are pilots as well as wreckers, and are bound to offer and render their services as pilots whenever they are properly required, and are to be paid for such services a reasonable compensation, to be agreed upon between the parties, or determined by the proper tribunals of the law. See the case of The Angeline [Case No. 385], decided in 1854. In determining the amount of such compensation it is proper, as in a salvage cause, to take into consideration all the circumstances of the case, the situation of the vessel, the difficulties of the channel, and the value of the property, and to increase or diminish the amount accordingly. If the circumstances under which the pilot services were rendered should be very extraordinary, and the value of the property very great, the court, in my judgment, would be justified in decreeing a compensation equal to what would probably be the share of the pilot vessel, in connection with other vessels in the salvage, in case the ship were lost; i. e. to give to the pilot vessel and crew what would be a fair salvage for them alone, and what vessels and crews of her size and numbers ordinarily draw in saving equal amounts of property. Beyond this amount, I do not think the court would ever be justified in going.

Under the circumstances in this case, I think fifteen hundred dollars is a reasonable compensation. It is therefore ordered, adjudged, and decreed that the libellants have and receive, in full compensation for their services, the sum of fifteen hundred dollars, and that upon the payment thereof and the costs and expenses of this suit, and the legal charges upon the property incurred in this port, the marshal restore said ship and cargo to the master thereof, for and on account of whom it may concern.